966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SERVICE MERCHANDISE, INC., Plaintiff-Appellee, Cross-Appellant,
v.
JOHNSON & HIGGINS OF GEORGIA, INC., Defendant-Appellant,
Cross-Appellee.
 Nos. 91-5678, 91-5733.
 United States Court of Appeals, Sixth Circuit.
 June 25, 1992.
 
 Before KENNEDY and SUHRHEINRICH, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM:
 
 
 1
 Defendant Johnson & Higgins appeals the judgment for plaintiff in this diversity breach of contract action. Plaintiff Service Merchandise cross-appeals, alleging error in the denial of pre-judgment interest. For the reasons set forth below, we REVERSE the decision of the District Court.
 
 I.
 
 2
 Service Merchandise is a general retailed based in Nashville, Tennessee. In 1985, Service Merchandise acquired the H.J. Wilson Co., another retailer. Included in the ultimate purchase was a Wilson distribution center (warehouse) in Garland, Texas. In 1987, a fire destroyed the center and its contents. The contents of the center were insured on a replacement cost basis. Service Merchandise contends that they should have been insured on a selling price basis. Thus, Service Merchandise did not receive the anticipated profit from a complete turnover of that inventory.
 
 
 3
 Johnson & Higgins, which acted as broker for Service Merchandise on its other premises, hoped to be the broker for Service Merchandise on the Wilson acquisition. Johnson & Higgins submitted a proposed policy and program for the acquired warehouse properties. However, Wilson had been negotiating with its own broker, Alexander & Alexander, for a three-year policy. Service Merchandise decided to go ahead and have Alexander & Alexander obtain the coverage, but to make Johnson & Higgins broker-of-record after the policy was issued. Service Merchandise had its own professional risk management department which made this decision. The policy provided by Alexander & Alexander was a replacement cost, and not a selling cost, policy. Alexander & Alexander received the commissions for the first policy year. Johnson & Higgins, when it was Service Merchandise's broker on its other policies, had procured selling cost insurance and knew that Service Merchandise ordinarily wanted selling cost insurance on warehouse merchandise. Only on merchandise in stores did Service Merchandise use replacement cost insurance, in conjunction with business interruption insurance.
 
 
 4
 In 1986, when Service Merchandise named Johnson & Higgins the broker-of-record for the Wilson distribution center, it provided Johnson & Higgins with copies of all of its insurance coverages. As Service Merchandise's broker, Johnson & Higgins reviewed the entire risk management system employed by Service Merchandise to determine any deficiencies. These review and procurement functions were typical of any brokerage capacity, and were compensated through the insurance policy premiums. In fact, it was the coverage underwriter, rather than Service Merchandise, that paid Johnson & Higgins. The relationship between the parties was thus a standard insurance broker agreement, and did not encompass a separately specified and separately compensated review function.
 
 
 5
 During 1986 and 1987, Johnson & Higgins did perform as Service Merchandise's insurance broker, participating in the company's entire risk management program. Although Johnson & Higgins was aware of Service merchandise's intention to have selling price insurance coverage for its distribution centers, and it did recommend other modifications to the policies and programs in effect, it never notified Service Merchandise of the replacement cost provision on the Garland warehouse policy, and therefore failed to procure the selling cost coverage desired by Service Merchandise. The policy did have a selling cost endorsement form, but that covered only merchandise in layaway. Premiums were paid on the basis of replacement cost values provided by Service Merchandise.
 
 
 6
 After the 1987 fire, both Johnson & Higgins and Service Merchandise discovered the inadequacy in the policy. Service Merchandise then brought this diversity action in Tennessee, seeking to recover the difference between what it did receive under its replacement cost policy and what it would have received had it been covered with a selling price policy. The District Court concluded that the claim was effectively a breach of contract action, and under Tennessee choice of law, the law of the situs of the contract governs. The court therefore applied Georgia law to determine whether Service Merchandise could recover under its insurance broker contract with Johnson & Higgins. Although the court found Georgia law in this area to be unclear, it determined that Service Merchandise could recover from Johnson & Higgins.
 
 II.
 
 7
 As the District Court properly noted, the law of Georgia concerning breach of contract suits against insurance agents and brokers for improper policies is discordant. A long line of cases have consistently held that the insured's duty to read the contract is paramount, and bars all suits arising from the insured's failure to read the policy. See, e.g., King v. Brasington, 252 Ga. 109, 312 S.E.2d 111, 112 (1984) ("an insured has a duty to examine and reject a policy providing incorrect or insufficient coverage"); Greene v. Lilburn Ins. Agency, Inc., 191 Ga.App. 829, 383 S.E.2d 194 (1989) (same). Under these cases, therefore, Johnson & Higgins argues that Service Merchandise cannot recover for the incorrect/insufficient coverage in its policy that it did not read. Johnson & Higgins points out that, in fact, the policy Service Merchandise procured through its own agent, Alexander and Alexander, specifically required replacement cost coverage, and the premiums were based on replacement cost coverage. Johnson & Higgins argues that Service Merchandise's failure to read the policy, either at the time of purchase or each year at renewal, bars it from recovery.
 
 
 8
 Service Merchandise contends, on the other hand, that Georgia law recognizes an exception to the duty to read. In Wright Body Works, Inc. v. Columbus Interstate Ins. Agency, 233 Ga. 268, 210 S.E.2d 801 (1974), the Georgia Supreme Court drew a distinction between an insurance broker, who represents the insurance company, and who is relieved of liability if the unread policy does not provide what the insured anticipated, and an insurance agent, who represents the insured, and is not relieved of such liability. The court in Wright Body focussed on the nature of the services performed, i.e., determine the proper type and amount of coverage, and then procure an appropriate policy. In such a case, the insured was eligible to recover from its agent for an inadequate policy.
 
 
 9
 Subsequent Georgia cases, however, have substantially muddied the waters. These cases do not incorporate the bright line distinction between agent and broker, but rather have focussed on the discretion and judgment exercised by the parties. For example, in Ethridge v. Assoc. Mutuals, Inc., 160 Ga.App. 687, 288 S.E.2d 58 (1981), the Georgia Appeals Court denied recovery to an insured on the grounds that the error did not occur in what to buy, but rather in whether what was purchased in fact provided those coverages, which would have been ascertained by fulfilling the duty to read. The court distinguished Wright Body by noting that in that case the insured delegated both the discretionary decision about the appropriate coverage and the duty to read, for compliance with the duty to read would have been futile. Thus, in cases after Ethridge, the Wright Body rule has been limited to situations where the insured relies on the broker or agent to determine the appropriate coverage and that discretionary decision proves negligent.
 
 
 10
 In this case, however, the error occurred not in what Service Merchandise wanted, nor in what it received, but in what it requested. Service Merchandise, through its employees and agent Alexander & Alexander, specifically requested and paid for a policy with replacement cost coverage. Service Merchandise therefore had a duty to read this policy upon receipt. Had it done so, it would have realized that it did not have selling cost coverage.
 
 
 11
 The District Court acknowledged as much, and noted that Service Merchandise could not recover from the party responsible for selling it the insurance, Alexander & Alexander. The court went on, however, to find that Service Merchandise had contractually delegated its duty to read the policy to Johnson & Higgins, by virtue of the account review performed by Johnson & Higgins after it became broker-of-record. Under the District Court's analysis, the parties contracted around the duty to read, and Johnson & Higgins undertook not to procure insurance for Service Merchandise, but rather to read, evaluate and conform Service Merchandise's coverages to its intentions.
 
 
 12
 We disagree with the court's reading of Georgia law. The District Court has drawn an artificial distinction between the functions performed by Johnson & Higgins. Under the District Court's reasoning, the contract between Johnson & Higgins and Service Merchandise contained three functions. Under the first, Johnson & Higgins was to analyze the risk management program at Service Merchandise and recommend practices and policies to effectuate an appropriate risk management program. Under the second, Johnson & Higgins was to review the coverages already obtained by Service Merchandise and identify any deficiencies. Finally, Johnson & Higgins was then to procure/sell Service Merchandise policies to fill in the deficiencies in the risk management program.
 
 
 13
 In light of Service Merchandise's sophistication and the expertise of its risk management department, Service Merchandise could not recover for any failings in the performance of either the first or third functions encompassed in its contract with Johnson & Higgins. Under the District Court's reading of the law, however, it can recover under the second function. We are left with an anomalous situation. Johnson & Higgins can recommend an inappropriate policy and not be liable. Or Johnson & Higgins can determine the appropriate policy, sell Service Merchandise a gap filler that does not in fact fill the gap, and yet not be liable. But, if Johnson & Higgins fails to sell any policy, because it did not properly perform Service Merchandise's duty to read, it is liable. What's more, Service Merchandise could not recover from the party that sold it the policy that did not do what it anticipated the policy would do.
 
 
 14
 We decline to adopt the District Court's fine distinctions between the functions performed by Johnson & Higgins as insurance broker for Service Merchandise. In our view, Georgia law imposes on sophisticated insureds such as Service Merchandise a duty to ensure that the policy procured is in fact what it sought to purchase. Service Merchandise rejected Johnson & Higgins' proposal, and specifically requested and paid for a replacement cost policy. Johnson & Higgins failed to notify them that the policy was not what they assumed it was, and so failed to replace the policy with a selling price policy. Under our view of Georgia law, the duty to read is imposed for exactly these types of circumstances. Insureds are not allowed to assume a policy provides for something which it in fact does not, and then recover from the party contractually responsible for procuring the proper coverage.
 
 III.
 
 15
 In light of the foregoing, we REVERSE the judgment of the District Court. We therefore have no occasion to consider plaintiff's cross-appeal concerning prejudgment interest.
 
 
 
 *
 The Honorable William O. Bertelsman, United States District Court for the Eastern District of Kentucky, sitting by designation